**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| AL-EZZ DEKHEILA STEEL ALEXANDRIA COMPANY (SAE), *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-04576 |

**COMPLAINT**

Plaintiffs, Al-Ezz Dekheila Steel Alexandria Company (SAE), Ezz Steel Company S.A.E., Ezz Rolling Mills Company (SAE), Al-Ezz Flat Steel Company (SAE), Contra Steel Company, and Al-Ezz Group Holding Company for Industry & Investment (collectively, the "Ezz Group" or "Plaintiffs") by and through their attorneys, allege and state as follows:

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. Plaintiffs bring this action to contest certain aspects of the final determination issued by the U.S. Department of Commerce ("Commerce") in its countervailing duty ("CVD") investigation of steel concrete reinforcing bar ("rebar") from Egypt. The final determination was published by Commerce in the Federal Register as *Steel Concrete Reinforcing Bar from Egypt: Final Affirmative Countervailing Duty Determination*, 91 Fed. Reg. 48,068 (Dep't Commerce July 30, 2026) ("Final Determination"). The findings and conclusions of the contested determination are set forth in the accompanying *Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Steel Concrete Reinforcing Bar from Egypt*, Inv. No. C-729-806 (July 27, 2026) ("Issues and Decision Mem."). The countervailing

duty order based on the final determination was published in the Federal Register on September 18, 2026, as *Steel Concrete Reinforcing Bar from the Socialist Republic of Vietnam and Egypt: Countervailing Duty Orders*, 91 Fed. Reg. 59,102 (Dep't Commerce Sept. 18, 2026) ("CVD Order").

**JURISDICTION**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Section 516A of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i).

**STANDING**

3. Plaintiffs, the Ezz Group, are foreign producers and exporters of subject merchandise, who are interested parties under 19 U.S.C. § 1677(9)(A). Additionally, Plaintiffs were active participants during the investigation which led to the challenged final determination. Plaintiffs submitted questionnaire responses, filed administrative case and rebuttal briefs, and appeared at the Commerce hearing. Accordingly, Plaintiffs have standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

**TIMELINESS OF THIS ACTION**

4. Plaintiffs commenced this action by filing the summons with the Court on October 16, 2026, which is within thirty days after the date of publication of the CVD Order on September 18, 2026, and in accordance with 19 U.S.C. § 1516a(a)(2)(A)(i)(II).

5. This complaint is timely filed within 30 days of the filing of the summons in this action as prescribed in 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and in accordance with CIT Rule 3(a)(2). Therefore, this action is timely brought pursuant to 28 U.S.C. § 2636(c).

**STATEMENT OF FACTS**

6. On June 4, 2025, Commerce received CVD petitions regarding imports of rebar from Algeria, Egypt, and the Socialist Republic of Vietnam filed on behalf of the Rebar Trade Action Coalition ("the Petitioner"), a coalition of domestic producers of rebar. On June 30, 2025, Commerce initiated its CVD investigation on rebar from Algeria, Egypt, and Vietnam. *See Steel Concrete Reinforcing Bar from Algeria, Egypt, and the Socialist Republic of Vietnam: Initiation of Countervailing Duty Investigations*, 90 Fed. Reg. 27,838 (Dep't Commerce June 30, 2025). The period of investigation ("POI") was from January 1, 2024, through December 31, 2024. *Id.*

7. On July 11, 2025, Commerce selected Al-Ezz Dekheila Steel Alexandria Company (SAE) ("EZDK") and Ezz Steel Company S.A.E. ("ESR") as the mandatory respondents in the CVD investigation. *See* Commerce Memorandum, *Decision Memorandum for the Preliminary Affirmative Determination in the Countervailing Duty Investigation of Steel Concrete Reinforcing Bar from Egypt* (January 8, 2026) ("Preliminary Decision Mem.").

8. On July 14, 2025, Commerce issued the initial CVD questionnaire to the Government of Egypt ("GOE") and requested that the GOE forward the CVD questionnaire to both mandatory respondents. Preliminary Decision Mem. at 2. From August through October 2025, the GOE and the Plaintiffs submitted timely responses to Commerce's initial and supplemental questionnaires. *See id.*

9. On September 24, 2025, the Petitioner filed new subsidy allegations and uncreditworthiness allegations. *Id.* at 3.

10. On September 26, 2025, both the Plaintiffs and the Petitioner submitted benchmark information. *Id.* On November 17, 2025, the Plaintiffs and the Petitioner submitted rebuttal benchmark information. *Id.* As relevant here, interested parties submitted benchmark information

for measuring the adequacy of remuneration for natural gas purchased from GOE-owned entities, and electricity purchased from GOE-owned entities.

11. On November 14, 2025, Commerce tolled all deadlines in this proceeding by 47 days due to the lapse in appropriations and the Federal Government shutdown. On November 24, 2025, Commerce again tolled all deadlines by an additional 21 days. *Id.* at 4.

12. On November 24, 2025, the Petitioner filed pre-preliminary comments. On December 29, 2025, the Ezz Group submitted pre-preliminary comments. And on January 6, 2026, the GOE submitted pre-preliminary comments.

13. On January 13, 2026, Commerce published in the Federal Register its preliminary determination in the countervailing duty investigation in which it calculated a subsidy rate of 29.51 percent for the Ezz Group, and 29.51 percent for All Others. *See Steel Concrete Reinforcing Bar from Egypt: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 91 Fed. Reg. 1263 (Dep't Commerce Jan. 13, 2026) ("Preliminary Determination") and accompanying Preliminary Decision Memorandum.

14. As relevant to this appeal, in its preliminary determination, Commerce determined that the GOE conferred a benefit to the Ezz Group through the provision of natural gas for less than adequate remuneration ("LTAR"). By relying on a flawed application of the Federal Circuit's decision in *Mosaic Co. v. United States*, 160 F.4th 1340 (Fed. Cir. 2025) ("*Mosaic*"), Commerce preliminarily determined that the provision of natural gas for LTAR was a *de facto* specific subsidy because the Ezz Group, as an enterprise, is a predominant user of the subsidy pursuant to section 771(5A)(D)(iii)(II) of the Act, 19 U.S.C. § 1677(5A)(D)(iii)(II). Preliminary Decision Mem. at 10-11.

15. Relatedly, to calculate a benefit for the program, Commerce selected a benchmark using the methodology described 19 C.F.R. § 351.511(a)(2). First, Commerce determined that there was no viable tier one benchmark because the natural gas market in Egypt is distorted. Next, Commerce selected UN Comtrade export data as the "most appropriate" tier-two benchmark. To calculate a benchmark, Commerce included both gaseous natural gas ("GNG") and liquified natural gas ("LNG") prices from countries which the GOE had a pipeline connection. Finally, Commerce calculated delivered prices by adding pipeline freight to GNG average unit values ("AUV"), and adding ocean freight, insurance, regasification, and pipeline freight to LNG AUVs. Using this benchmark, Commerce preliminarily calculated a benefit to the Ezz Group under the natural gas for LTAR program of 13.86 percent *ad valorem*. *Id.* at 8, 10-12.

16. Regarding the provision of electricity for LTAR, Commerce also preliminarily determined that program was *de facto* specific because the iron industry, as an industry, is a predominant user of the subsidy pursuant to section 771(5A)(D)(iii)(II) of the Act, 19 U.S.C. § 1677(5A)(D)(iii)(II). *Id.* at 13.

17. Additionally, Commerce similarly utilized its regulatory benchmark hierarchy to calculate a benefit for the electricity program. Like with natural gas, Commerce preliminarily determined that the electricity market is distorted and therefore a tier one benchmark was not appropriate. *Id.* Next, Commerce noted that no tier two benchmarks were available because the GOE did not report export prices from Egypt to Jordan, Libya, and Sudan – countries with cross-border electricity interconnections. *Id.* Instead, Commerce selected, as a tier three benchmark, Jordanian electricity prices from select categories of the Jordanian tariff schedule. Commerce then converted the benchmark Jordanian tariff prices to EGP/kWh to calculate a benefit of 15.39 percent *ad valorem* for the electricity for LTAR program. *Id.* at 14.

18. Commerce subsequently issued several post-preliminary questionnaires to the GOE and the Ezz Group. Relevant to this appeal, on February 18, 2026, Commerce requested that the GOE report export quantity and price for electricity exported to Jordan, Libya, and Sudan during the POI. *See* Commerce's Letter to the Government of Egypt, "New Subsidy Allegations Initial Questionnaire," at 4 (Feb. 18, 2026). Additionally, on March 30, 2026, Commerce further requested that the Ezz Group provide supporting documentation which shows whether its purchases of natural gas were of LNG or GNG. *See* Commerce's Letter to the Ezz Group, "Supplemental Questionnaire on LNG Documentation," (March 30, 2026). The GOE and the Ezz Group submitted timely responses. *See* Issues and Decision Mem. at 2.

19. On April 30, Commerce issued its post-preliminary determination addressing the new subsidy allegation and uncreditworthiness allegation. *See* Commerce Memorandum, *Post-Preliminary Analysis Memorandum for the Countervailing Duty Investigation of Steel Concrete Reinforcing Bar from Egypt* (April 30, 2026) ("Post-Prelim Mem."). In its post-prelim analysis, Commerce determined that the Ezz Group did not receive a value-added tax ("VAT") suspension during the POI. Post-Prelim Mem. at 2. Additionally, Commerce further determined that members of the Ezz Group, EZDK and EFS, were not uncreditworthy during the relevant period. *Id.* at 3.

20. From April 20, 2026, through April 23, 2026, Commerce conducted a virtual verification of questionnaire responses submitted by the Ezz Group. *See* Commerce Memorandum, "Verification of the Questionnaire Responses of Ezz Group," (May 27, 2026).

21. From May 4, 2026, through May 6, 2026, Commerce conducted virtual verification of questionnaire responses submitted by the GOE. *See* Commerce Memorandum, "Verification of the Questionnaire Responses of Government of Egypt," (May 27, 2026).

22. On June 10, 2026, Plaintiffs, the GOE, and the Petitioner submitted case briefs to Commerce requesting that changes be made to certain aspects of the preliminary determination. Issues and Decision Mem. at 3. On June 17, 2026, Plaintiffs and the Petitioner each submitted rebuttal case briefs. *Id.*

23. In their case brief, Plaintiffs argued that Commerce's determination that the provision of natural gas was *de facto* specific was unsupported by substantial evidence and unlawful. *See* Brief from Steptoe LLP to Sec'y Commerce, "Countervailing Duty Investigation of Steel Concrete Reinforcing Bar from Egypt: Ezz Group Case Brief" (June 10, 2026) ("Ezz Group Case Brief"). First, Plaintiffs argued that Commerce's *de facto* specificity determination rests on several factual errors which are unsupported by the record evidence. Ezz Group Case Brief at 5-8. Additionally, Plaintiffs argued that Commerce's interpretation and application of the Federal Circuit's *Mosaic* decision was flawed. *Id.* at 8-10.

24. Plaintiffs also argued that Commerce's selection of UN Comtrade export data as the natural gas benchmark was unlawful because: a) Commerce had previously determined that UN Comtrade data were distortive unsuitable for purposes of benchmarking natural gas prices; b) UN Comtrade data improperly commingle tier one benchmark prices with tier two prices; c) Commerce must remove the use of LNG values from the benchmark calculation; and d) the record evidence, including world market price data, demonstrates that natural gas prices in Egypt are consistent with market principles. Ezz Group Case Brief at 10-20.

25. Lastly, with respect to the provision of natural gas, Plaintiffs argued that Commerce must offset certain non-tariff costs, including license fees and insurance deposits, from its benefit calculation pursuant to section 771(6)(A) of the Act, 19 U.S.C. § 1677(6)(A). Ezz Group Case Brief at 20-22.

26. Regarding the provision of electricity, Plaintiffs similarly argued that Commerce's *de facto* specificity determination was unsupported by substantial evidence and unlawful. Ezz Group Case Brief at 22-25.

27. Additionally, for benchmarking purposes, Plaintiffs argued that Commerce should use the GOE's export price data requested by Commerce after the preliminary determination as a tier two benchmark. *Id.* at 25-28. Should Commerce continue to select a tier three benchmark, Plaintiffs argued that Commerce should average Sudanese domestic electricity prices with Jordanian prices when calculating a tier three benchmark. *Id.* at 28.

28. Finally, Plaintiffs also argued that Commerce must also offset non-tariff costs reported by the Ezz Group when calculating the benefit for the provision of electricity program pursuant to section 771(6)(A) of the Act, 19 U.S.C. § 1677(6)(A). *Id.* at 28-30.[1]

29. On July 27, 2026, Commerce issued its final decision memorandum. *See generally* Issues and Decision Mem. In it, Commerce explained that the only change made since the preliminary determination and post-preliminary analysis was to remove the LNG prices from the natural gas benchmark used to calculate a benefit for the natural gas for LTAR program. *Id.* at 3.

30. In its final determination, Commerce continued to determine that the provision of natural gas was *de facto* specific. *Id.* at 5-9. As support, Commerce relied on the Federal Circuit's decision in *Mosaic* to exclude entire sectors of the Egyptian economy from its specificity analysis. *Id.* at 6-8. Additionally, Commerce disregarded the substantial evidence which demonstrated that the Ezz Group's share of natural gas purchases during the POI were insufficient for a "predominant

[1] The Ezz Group also raised an argument challenging whether certain loans obtained through a program established by the Central Bank of Egypt constituted countervailable subsidies, but it is not pursuing that specific issue in this appeal. *See* Ezz Group Case Brief at 30.

use" determination. *Id.* at 8. Instead, Commerce determined that it is not required to apply a numerical threshold for determining predominant use. *Id.* at 8-9.

31. Moreover, Commerce continued to rely on UN Comtrade export data for its natural gas benchmark. *Id.* at 9-13. While Commerce appropriately removed LNG prices from the benchmark, it ignored its own agency precedent which previously determined that UN Comtrade export data were unsuitable for benchmarking natural gas. *Id.* Further, Commerce also determined that non-tariff costs could not be offset from its natural gas benefit calculation because the relevant fees were not paid to the authority providing the subsidy. *Id.* at 13.

32. Commerce also determined that the provision of electricity was *de facto* specific. *Id.* at 13-15. Commerce again supported its determination by excluding certain sectors of the Egyptian economy from its specificity analysis and again declined to apply a numerical threshold for determining what constitutes a predominant user. *Id.* at 14-15.

33. Furthermore, Commerce declined to alter its electricity benchmark and continued to rely on Jordanian domestic tariffs as a tier three benchmark. *Id.* at 16-19. Lastly, Commerce also declined to offset its electricity benefit calculation by non-tariff costs because it again determined that the Ezz Group did not pay these fees and expenses to the subsidizing authority. *Id.* at 19.

34. Subsequently, Commerce published the final affirmative countervailing duty determination on rebar from Egypt on July 30, 2026. In the final determination, Commerce calculated a 23.27 percent subsidy rate for the Ezz Group and for All Others. *See Final Determination*, 91 Fed. Reg. at 48,069.

35. On September 18, 2026, Commerce published the countervailing duty order on rebar from Egypt. *See CVD Order*, 91 Fed. Reg. 59,102.

36. This appeal followed.

## STATEMENT OF CLAIMS

37. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

38. Commerce's final determination is unsupported by substantial evidence and is otherwise not in accordance with law in the following respects:

### Claim One: The Provision Of Natural Gas Is Not *De Facto* Specific

39. The Ezz Group incorporates paragraphs 1 through 38 by reference.

40. Commerce's determination that the provision of natural gas was *de facto* specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(II) is unsupported by substantial evidence and is otherwise not in accordance with law.

### Claim Two: Commerce's Benefit Determination For The Provision Of Natural Gas Was Unlawful

41. The Ezz Group incorporates paragraphs 1 through 40 by reference.

42. Commerce's selection of UN Comtrade export data as a benchmark for measuring the adequacy of remuneration for purchases of natural gas was unsupported by substantial evidence and is otherwise not in accordance with law.

43. Additionally, Commerce's denial of an offset pursuant to 19 U.S.C. § 1677(6)(A) for licensing fees and insurance deposits incurred by the Ezz Group and necessary to purchase natural gas was unsupported by substantial evidence and otherwise not in accordance with law.

44. As such, Commerce's determination that the provision of natural gas provided a benefit pursuant to 19 U.S.C. § 1677(5)(E) is unsupported by substantial evidence and is otherwise not in accordance with law.

**Claim Three: The Provision Of Electricity Is Not *De Facto* Specific**

45. The Ezz Group incorporates paragraphs 1 through 44 by reference.

46. Commerce's determination that the provision of electricity was *de facto* specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(II) is unsupported by substantial evidence and is otherwise not in accordance with law.

**Claim Four: Commerce's Benefit Determination For The Provision Of Electricity Was Unlawful**

47. The Ezz Group incorporates paragraphs 1 through 46 by reference.

48. Commerce's reliance on Jordanian domestic tariffs as a benchmark for measuring the adequacy of remuneration for purchases of electricity was unsupported by substantial evidence and is otherwise not in accordance with law.

49. Additionally, Commerce's denial of an offset pursuant to 19 U.S.C. § 1677(6)(A) for non-tariff costs incurred by the Ezz Group and necessary to purchase electricity was unsupported by substantial evidence and otherwise not in accordance with law.

50. As such, Commerce's determination that the provision of electricity provided a benefit pursuant to 19 U.S.C. § 1677(5)(E) is unsupported by substantial evidence and is otherwise not in accordance with law.

## REQUEST FOR JUDGMENT AND RELIEF

51. WHEREFORE, Plaintiffs respectfully request that this Court:

52. Hold that the portions of Commerce's *Final Determination* complained of above are not supported by substantial evidence and are otherwise not in accordance with law;

53. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

54. Grant such further relief as this Court deems just and proper.

Dated: November 13, 2026

Respectfully submitted,

/s/ Eric Emerson
Eric Emerson
Zhu (Judy) Wang
Hendricks Valenzuela
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
eemerson@steptoe.com

*Counsel for Plaintiffs*
*The Ezz Group*

# CERTIFICATE OF SERVICE

***Al-Ezz Dekheila Steel Alexandria Company (SAE) et al. v. United States***

**CIT Case No. 26-04576**

Pursuant to U.S. Court of International Trade Rule 3(f), I hereby certify that on November 13, 2026, copies of Plaintiff's Complaint were served on the following parties by certified mail, return receipt requested.

**On Behalf of the United States:**
Attorney-In-Charge
U.S. Department of Justice
International Trade Field Office
Commercial Litigation Branch
26 Federal Plaza – Room 346
Civil Division
New York, NY 10278

**On Behalf of The Rebar Trade Action Coalition and its individual members, Byer Steel Corporation; Commercial Metals Company; Gerdau Ameristeel US Inc.; Nucor Corporation; Optimus Steel; and Steel Dynamics, Inc.**
Laura El-sabaawi, Esq.
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036

**On Behalf of ElMarakbysteel:**
Ramy Saleh, Esq.
ElMarakbysteel
Building No.8-3C, Polygon, Sodic West,
Beverly Hills, Giza Governorate

**On Behalf of Suez Steel Company:**
Hassan Salah ElGamasy
Suez Steel
Adabya st, Attaqa , Suez, Egypt ( P.O Box 35)

**On Behalf of the United States:**
Attorney-In-Charge
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW, Room 12124
Washington, D.C. 20530

**On Behalf of the United States:**
Robert Heilferty
U.S. Department of Commerce
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
1401 Constitution Avenue, NW
Washington, DC 20230

/s/ Eric C. Emerson
Eric C. Emerson